{¶ 137} I respectfully dissent. I would reverse the trial court's termination of the parental rights of Mrs. Yopko.
 {¶ 138} It is unfortunate that Mrs. Yopko is unable to address her alcoholism; however, the "termination of the rights of a birth parent is an alternative of last resort." In re Gill, 8th Dist. No. 79640, 2002-Ohio-3242, at ¶ 21 (citations omitted). The termination of parental rights statutes are in the nature of capital punishment statutes; their implementation results in the execution of all parental rights. See In re T.B., 11th Dist. No. 2008-L-055, 2008-Ohio-4415, at ¶ 29. The parents are left with no right to visit or communicate with a child, to participate in, or even to know about, any important decisions affecting the child's educational, emotional, or physical development.
 {¶ 139} "The purpose of the termination of parental rights statutes is to facilitate adoption and to make a more stable life for dependent children." In re Howard, 5th Dist. No. 85 A10-077, 1986 Ohio App. LEXIS 7860, at *5; In reHitchcock (1996), 120 Ohio App.3d. 88, 102 ("The purpose of placing children in permanent custody is to facilitate their adoption.") All children have the right, if possible, to parenting from either natural or adoptive parents which provides support, care, discipline, protection and motivation." Hitchcock, 120 Ohio App.3d. at 102.
 {¶ 140} H.R., who is presently 15 years old, has a strong bond with her family, an unwillingness to be adopted, and a high potential of sabotaging an adoption. Psychologist, Dr. Gazley, indicated in his report that H.R. is "terrified of the potential of adoption." During his interview, H.R. told him, "it would hurt me, my mother, and my family, I wouldn't be my mother's daughter * * * I don't want to be adopted." Dr. Gazley *Page 36 
opined that H.R. is not ready, at this point, for adoption. Further, "maintaining [her] biological family connections continues to be [H.R.'s] wish" and "making her family legal strangers would be devastating to her."
 {¶ 141} The termination of parental rights will not facilitate H.R.'s adoption. Witness testimony indicated that H.R. will either sabotage the adoption or postpone it until she reaches 18, when adoption would become moot. The best interests of almost sixteen year old H.R. is not to have her biological family relationship taken away from her without any reasonable expectancy of a new adoptive family. See Howard,1986 Ohio App. LEXIS 7860, at *6. The statute was "clearly not meant to destroy the parent-child relationship by placing a child who is not adoptable into a position of forever being without a parent-child family relationship under the guise of `being in the best interests' of the child." In re Stewart, 5th Dist. No. CA-3075,1985 Ohio App. LEXIS 5768, at *17.
 {¶ 142} It is not in H.R.'s best interest to terminate the parental rights of Mrs. Yopko. The evidence before the trial court supported preserving the family relationship, not granting permanent custody to GCJFS.
 {¶ 143} Accordingly, the judgment of the trial court should be reversed. *Page 1